Bryon J. Benevento (5254)
Kimberly Neville (09067)
DORSEY & WHITNEY LLP
Kearns Building
136 South Main Street, Suite 1000
Salt Lake City, UT 841010-1655
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
benevento.bryon@dorsey.com
neville.kimberly@dorsey.com

Steven C. Cherny (*pro hac vice pending*)
Joseph Milowic III (*pro hac vice pending*)
Matthew A. Traupman (*pro hac vice pending)*
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
stevencherny@quinnemanuel.com
josephmilowic@quinnemanuel.com
matthewtraupman@quinnemanuel.com

*Attorneys for Plaintiffs C.R. Bard, Inc.,*
*Bard Vascular, Inc. and Bard Access Systems, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| C.R. BARD, INC., a New Jersey corporation, BARD PERIPHERAL VASCULAR, INC., an Arizona corporation, and BARD ACCESS SYSTEMS, INC., a Utah corporation, <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL COMPONENTS, INC., a Pennsylvania corporation, <br><br> Defendant. | **COMPLAINT WITH JURY DEMAND** <br><br> Case No.:  _____ |

## COMPLAINT

Plaintiffs C. R. Bard, Inc., Bard Peripheral Vascular, Inc., and Bard Access Systems, Inc. ("Bard" or "Plaintiffs"), hereby demand a jury trial and allege the following against Defendant Medical Components, Inc. ("MedComp" or "Defendant"):

## NATURE OF ACTION

### A.    Infringement

1.    This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*

2.    Plaintiffs have filed this lawsuit to stop Defendant's unlawful infringement of Plaintiffs' patented inventions and to obtain damages, an injunction, and other relief.

### B.    Declaratory Judgment

3.    Plaintiffs also seek a declaration that U.S. Patent No. 8,852,160 ("the '160 patent" or "MedComp Patent-In-Suit") is invalid and/or not infringed by the manufacture, use, sale, offer for sale, or importation of Bard's access port products, including (1) the POWERPORT® Implantable Port, (2) the POWERPORT® M.R.I. Implantable Port, (3) the POWERPORT® isp Implantable Port, (4) the POWERPORT® Slim Implantable Port, (5) the POWERPORT® isp M.R.I.® Implantable Port, (6) the POWERPORT® duo M.R.I.® Implantable Port, (7) the POWERPORT® CLEARVUE® isp Implantable Port, (8) the POWERPORT® CLEARVUE® Slim Implantable Port, (9) the POWERPORT® VUE Implantable Port, and (10) the POWERPORT® VUE M.R.I.® Implantable Port (collectively, the "Bard Products-At-Issue").

4.    Bard brings this action to lift the cloud created by MedComp's claims of infringement of the '160 patent against it.  Without declaratory relief, MedComp's claims pose a substantial risk of injury to Bard as well as to its subsidiaries, suppliers, and customers who make, use, sell, offer for sale, or import Bard's access port products, including the Bard

Products-At-Issue. MedComp's claims also pose harm to Bard's manufacture, marketing, sale, and use of its access port products.

5.      MedComp has filed a complaint against C.R. Bard Inc., Bard Peripheral Vascular, Inc., and Bard Access Systems, Inc. in the Eastern District of Texas, alleging infringement of the '160 patent by the Bard Products-At-Issue (*Medical Components, Inc. v. CR Bard, Inc.*, No. 17-cv-237) (the "Texas Action"). However, none of the named defendants in the Texas Action either reside in Texas or maintain a regular and established place of business within the Eastern District of Texas. Venue for the Texas Action is therefore improper. *See* 28 U.S.C. § 1400(b). Bard therefore intends to move to dismiss and/or transfer the Texas Action for improper venue. A real, immediate, and substantial dispute exists between the parties concerning the '160 patent for which Bard now seeks declaratory relief.

## THE PARTIES

6.      C. R. Bard, Inc. is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business located at 730 Central Avenue, Murray Hill, New Jersey, 07974.

7.      Bard Access Systems, Inc. is a corporation organized and existing under the laws of the State of Utah with its principal place of business located at 605 N 5600 W, Salt Lake City, Utah, 84116. Bard Access Systems, Inc. is a wholly owned subsidiary and operating division of C.R. Bard, Inc.

8.      Bard Peripheral Vascular, Inc. is a corporation organized and existing under the laws of the State of Arizona with its principal place of business located at 1625 West 3rd Street, Tempe, Arizona, 85281. Bard Peripheral Vascular, Inc. is a wholly owned subsidiary and operating division of C.R. Bard, Inc.

9.      Upon information and belief, Medical Components, Inc. is a corporation organized under the laws of the State of Pennsylvania with its principal place of business at 1499 Delp Dr., Harleysville, Pennsylvania, 19438.

10.     Upon information and belief, MedComp has committed acts of infringement and has a regular and established place of business in this District.  For example, in addition to sales in this District, MedComp operates a warehousing, inventory control, and shipping facility located at 5570 W. 1730 South, Building 1, Suite 400, Salt Lake City, Utah, 84104.

## JURISDICTION AND VENUE

11.     This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court further has subject matter jurisdiction over Bard's request for a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

12.     Defendant is subject to general personal jurisdiction in this judicial district based upon its purposeful, systematic, and continuous contacts with Utah, including its warehousing, inventory control, and shipping facility located here.

13.     Venue is proper in this Court under 28 U.S.C. § 1400(b) because Defendant has committed acts of infringement and has a regular and established place of business in this District, including its warehousing, inventory control, and shipping facility located here. Defendant has also admitted to the propriety of jurisdiction and venue in *C.R. Bard, Inc. v. Medical Components, Inc.,* 1:12-cv-00032-RJS (D.I. 72 at ¶¶ 5-6).

## FACTUAL BACKGROUND

14.     Bard is an industry leader in wellness and prevention, early diagnosis, treatment, and post-care management.  Throughout its history, Bard has led the industry in groundbreaking devices and therapies that set the standard for excellence and quality.

15.    Bard's access ports provide a convenient method to repeatedly deliver a substance to remote areas of the body without requiring further surgical procedures.  These ports are implantable subcutaneously (*i.e.*, within the body), and they may be used for blood sampling or to infuse medicine, parenteral solutions, blood products, or other fluids.

**A.    Facts Relevant to Infringement Issues**

**THE BARD PATENTS-IN-SUIT**

16.    C.R. Bard, Inc. is the owner of U.S. Patent Nos. 8,025,639; 8,382,723; 8,585,663; and 8,603,052 (collectively, the "Bard Patents-In-Suit"), which generally relate to access port identification systems and methods, and to methods of power injecting a fluid through an access port.

17.    On September 27, 2011, the United States Patent and Trademark Office (the "PTO") duly and legally issued U.S. Patent No. 8,025,639 ("the '639 patent"), entitled "Methods of Power Injecting a Fluid Through an Access Port." A true and accurate copy of the '639 patent is attached hereto as Exhibit 1.

18.    On February 26, 2013, the PTO duly and legally issued U.S. Patent No. 8,382,723 ("the '723 patent"), entitled "Access Port Identification Systems and Methods." A true and accurate copy of the '723 patent is attached hereto as Exhibit 2.

19.    On November 19, 2013, the PTO duly and legally issued U.S. Patent No. 8,585,663 ("the '663 patent"), entitled "Access Port Identification Systems and Methods." A true and accurate copy of the '663 patent is attached hereto as Exhibit 3.

20.    On December 10, 2013, the PTO duly and legally issued U.S. Patent No. 8,603,052 ("the '052 patent"), entitled "Access Port Identification Systems and Methods."  A true and accurate copy of the '052 patent is attached hereto as Exhibit 4.

## **MEDCOMP'S ACCUSED PRODUCTS**

21.    MedComp makes, uses, imports, offers to sell, and/or sells venous access ports including the Dignity® CT Ports, the Dignity® Mini, the Dignity® Titanium CT Ports, the Pediatric Dignity® Mini, the Dignity® Dual Ports, and the Pro-Fuse® CT Ports (collectively, the "MedComp Products-At-Issue"), which are identified at http://www.medcompnet.com/products/ports/.

22.    Literature describing these access ports is available at http://www.medcompnet.com/products/PN2114J_Medcomp_Domestic_Catalog.pdf.

23.    Provided herewith as Exhibit 5 is a true and correct copy of the literature available at http://www.medcompnet.com/products/PN2114J_MedComp_Domestic_Catalog.pdf.

24.    Literature describing the Dignity® CT is available at http://www.medcompnet.com/products/ports/dignity_ct_ports.html#features.

25.    Provided herewith as Exhibit 6 is a true and correct copy of the literature available at http://www.medcompnet.com/products/ports/dignity_ct_ports.html#features.

26.    Literature describing the Dignity® Titanium CT is available at http://www.medcompnet.com/products/ports/dignity_titanium_ct_ports.html.

27.    Provided herewith as Exhibit 7 is a true and correct copy of the literature available at http://www.medcompnet.com/products/ports/dignity_titanium_ct_ports.html.

28.    Literature describing the Dignity® Mini CT is available at http://www.medcompnet.com/products/ports/dignity_mini.html.

29.    Provided herewith as Exhibit 8 is a true and correct copy of the literature available at http://www.medcompnet.com/products/ports/dignity_mini.html.

30.    Further literature describing the Dignity® Mini CT is available at http://angiopro.de/fileadmin/_workdata/pdfs/produkte/ports/3_pn2505b_dignity_mini_1.pdf.

31.     Provided herewith as <u>Exhibit 9</u> is a true and correct copy of the literature available at http://angiopro.de/fileadmin/_workdata/pdfs/produkte/ports/3_pn2505b_dignity_mini_1.pdf.

32.     Literature describing the Pediatric Dignity® Mini is available at http://www.medcompnet.com/products/pediatrics/pediatric_dignity_mini.html.

33.     Provided herewith as <u>Exhibit 10</u> is a true and correct copy of the literature available at http://www.medcompnet.com/products/pediatrics/pediatric_dignity_mini.html.

34.     Literature describing the Pro-Fuse® CT Ports is available at http://www.medcompnet.com/products/ports/pro-fuse_ct_ports.html#features.

35.     Provided herewith as <u>Exhibit 11</u> is a true and correct copy of the literature available at http://www.medcompnet.com/products/ports/pro-fuse_ct_ports.html#features.

36.     Literature describing the tech guide of the MedComp Products-At-Issue is available at http://angiopro.de/fileadmin/_workdata/pdfs/produkte/ports/1_pn2491a_medcomp_ct_ports_tech _guide_poster.pdf.

37.     Provided herewith as <u>Exhibit 12</u> is a true and correct copy of the literature available at http://angiopro.de/fileadmin/_workdata/pdfs/produkte/ports/1_pn2491a_medcomp_ct_ports_tech _guide_poster.pdf.

38.     Literature describing the instructions for use of the MedComp Products-At-Issue is available at http://medcompnet.com/products/ifu_pages/IFUs/Ports/Dignity/domestic/40514US___A_1-04- 17.pdf.

39.     Provided herewith as Exhibit 13 is a true and correct copy of the literature available at http://medcompnet.com/products/ifu_pages/IFUs/Ports/Dignity/domestic/40514US___A_1-04-17.pdf.

40.     The MedComp Products-At-Issue are each access ports that are implanted subcutaneously.  These ports are capable of identification after implantation.  *See* Exhibits 5-11.

41.     The MedComp Products-At-Issue each include several structural features, including at least a body, a septum, multiple side surfaces, and a bottom surface.  The images below illustrate these features.

<u>Dignity</u>® CT Port



Dignity® Mini Port



Dignity® Titanium CT Port



Pro-Fuse® CT Port



Pediatric Dignity® Mini Port



42.    And at least one of the structural features of each of the Dignity® products (*i.e.*, all of the MedComp Products-At-Issue except for the Pro-Fuse® CT Ports) includes a concave surface.  The images below illustrate these features.

Dignity® CT Port



Dignity® Mini Port



**Concave sides**
Allow for controlled,
accurate port assem-
bly and placement

Dignity® Titanium CT Port



Pediatric Dignity® Mini Port



43.    And each of the Dignity® products (*i.e.*, all of the MedComp Products-At-Issue except for the Pro-Fuse® CT Ports) has an outlet stem on a side surface different from the side surfaces that are concave.  The images below illustrate these features.

Dignity® CT Port



Dignity® Mini Port



Dignity® Titanium CT Port



Pediatric Dignity® Mini Port



44.     The bottom surfaces of each of the MedComp Products-At-Issue include a message observable via imaging technology subsequent to implantation of the access port.

45.     For example, the MedComp Products-At-Issue each expressly contain "[u]nique printing allow[ing] 'CT' to be visible under X-ray" or "ink allow[ing] 'CT' to be visualized under X-ray." *See* Exhibits 5-11.

46.     The MedComp Products-At-Issue each are power injectable.

47.     For example, the CT Ports Tech Guide, a guide for use of the Dignity® and Pro-Fuse® CT injectable ports, describes the "power injection procedure" to be followed.  *See* Exhibit 12.

48.     And the MedComp Products-At-Issue each expressly "allow[] CT injections for diagnostic imaging at up to 5cc/sec at 300psi" or "allow[] up to 5cc/sec power injection."  *See* Exhibits 5-11.

49.     The MedComp Products-At-Issue are each suitable for passing fluid through at a rate of at least 1 milliliter per second, and they are structured for accommodating a pressure of at least 35 psi.

50.     For example, the CT Ports Tech Guide describes the "maximum flow rate" for the Dignity® and Pro-Fuse® CT injectable ports, and those flow rates are either 2 milliliters per second or 5 milliliters per second, depending on the needle gauge size.  *See* Exhibit 12.

51.     And the MedComp Products-At-Issue each expressly "allow[] CT injections for diagnostic imaging at up to 5cc/sec" or "allow[] up to 5cc/sec power injection."  *See* Exhibits 5-11.

52.     The MedComp Products-At-Issue each include infusion sets.  Those sets include a needle, tubing, and a connector.  *See* Exhibits 5-11.

53.     For example, the MedComp Products-At-Issue each expressly include a "set," which contains, among other things, an "introducer needle," "Huber needles," a "blunt tip needle," "catheter locks," and "guidewire."  *See* Exhibits 5-11.

54.     Upon information and belief, based on the known characteristics of the products, including those described above, the needle and the tubing included in the MedComp Products-At-Issue sets have a burst pressure of at least 100 psi.  As a further example, the CT Ports Tech

Guide describes the "max pressure" for the Dignity® and Pro-Fuse® CT injectable ports as 300 psi for various needle gauge sizes.  *See* Exhibit 12.

**B.      Facts Relevant to Declaratory Judgment Issues**

55.      Among the access ports that Bard markets, sells, and/or offers for sale in the United States, either currently or in the past, are (1) the POWERPORT® Implantable Port, (2) the POWERPORT® M.R.I. Implantable Port, (3) the POWERPORT® isp Implantable Port, (4) the POWERPORT® Slim Implantable Port, (5) the POWERPORT® isp M.R.I.® Implantable Port, (6) the POWERPORT® duo M.R.I.® Implantable Port, (7) the POWERPORT® CLEARVUE® isp Implantable Port, (8) the POWERPORT® CLEARVUE® Slim Implantable Port, (9) the POWERPORT® VUE Implantable Port, and (10) the POWERPORT® VUE M.R.I.® Implantable Port.

56.      Upon information and belief, MedComp holds title (by assignment) to the '160 patent, entitled "Venous access port with molded and/or radiopaque indicia," issued on October 7, 2014.  A true and accurate copy of the '160 patent is attached hereto as <u>Exhibit 14</u>.

57.      On April 27, 2017, MedComp filed a complaint in the Eastern District of Texas, alleging that Bard has infringed the '160 patent.  Bard denies that it has infringed the '160 patent and further alleges that each of the claims of the '160 patent are invalid.

58.      Bard intends to file a motion to dismiss, based at least on improper venue, in the Texas Action, because Bard does not have a regular and established place of business in the Eastern District of Texas.

59.      On the other hand, upon information and belief, MedComp has a regular and established place of business in this District, at least based on its infringement in this District and its warehousing, inventory control, and shipping facility located at 5570 W. 1730 South, Building 1, Suite 400, Salt Lake City, Utah 84104.

60.     MedComp's allegations that Bard has infringed the '160 patent in its complaint filed in the Texas Action create an actual case or controversy regarding the validity and alleged infringement of the '160 patent.  MedComp's infringement allegations create a substantial controversy between MedComp and Bard that threatens Bard's legal interests with sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Absent a declaration of non-infringement and/or invalidity, MedComp's continued wrongful assertions of infringement against Bard related to the alleged manufacture, use, sale, offer for sale, and/or importation of Bard's access port products, including the Bard Products-At-Issue, will harm Bard and its customers.

## COUNT I

## INFRINGEMENT OF THE '639 PATENT

61.     The allegations of paragraphs 1-60 are incorporated by reference as if fully set forth herein.

62.     Defendant has infringed, and continues to infringe, claims 1-12 of the '639 patent by making, using, offering for sale, selling, and/or importing into the United States, access port products, including the MedComp Products-At-Issue.

63.     The access ports that infringe the '639 patent include at least the MedComp Products-At-Issue made, marketed, distributed, sold, and/or offered for sale by MedComp throughout the United States and in this District.  These access ports include each and every limitation recited in claims 1-12.

64.     Claims 1-12 of the '639 patent recite "implanting in a patient an access port suitable for passing fluid therethrough at a rate of at least 1 milliliter per second."  First, MedComp and its MedComp Products-At-Issue induce a medical professional to "implant an access port."  *See* Exhibit 13.  Second, the access ports in the MedComp Products-At-Issue are

designed to pass fluid at the claimed rate.   The CT Ports Tech Guide describes the "maximum

flow rate" for the Dignity® and Pro-Fuse® CT injectable ports, and those flow rates are either 2

milliliters per second or 5 milliliters per second, depending on the needle gauge size.  *See* Exhibit

12.  And each of the MedComp Products-At-Issue are described by MedComp as "allowing CT

injections for diagnostic imaging at up to 5cc/sec at 300psi" or "allowing up to 5cc/sec power

injection."  *See* Exhibits 5-11.

   65.    Claims 1-12 of the '639 patent recite that "the access port includ[e] a body

defining a cavity, a septum, and an outlet in fluid communication with the cavity."  Those

external features can be seen in the figures below (the cavity, not labeled below, is internal and,

upon information and belief, based on known characteristics of the MedComp Products-At-Issue,

in fluid communication with the outlet).

Dignity® CT Port



18

Dignity® Mini Port



**Concave sides**
Allow for controlled, accurate port assembly and placement

Dignity® Titanium Port



CONCAVE SIDES
Allow for controlled, accurate port assembly and placement.

Pro-Fuse® CT Port



Pediatric Dignity® Mini Port



66.      Claims 1-12 of the '639 patent recite that "the body and septum [are] structured for accommodating a pressure developed within the cavity of at least 35 psi."  The body and septum in the MedComp Products-At-Issue are structured for accommodating pressure at the claimed rate.  The CT Ports Tech Guide describes the "max pressure" for the Dignity® and Pro-Fuse® CT injectable ports as 300 psi.  *See* Exhibit 12.  And several of the MedComp Products-At-Issue (Dignity® CT Ports, Dignity® Mini, and Pediatric Dignity® Mini) are described by MedComp as "allowing CT injections for diagnostic imaging at up to 5cc/sec at 300psi."  *See* Exhibits 6, 8, and 10.  And the Pro-Fuse® CT Ports have an injection rating of 5cc/sec at 325 psi.

*See* Exhibit 11.  Upon information and belief, based on their known characteristics and their similarities to the other MedComp Products-At-Issue, the body and septum in the Dignity® Titanium CT Ports and Dignity® Dual Ports are also structured for accommodating pressure at the claimed rate.

67.     Claims 1-12 of the '639 patent recite "an infusion set," which comprises "a non-coring needle having a burst pressure of at least 100 psi; a polymer tubing in fluid communication with the needle, the tubing having a burst pressure of at least 100 psi; and a connector having an inner surface affixed to an outer surface of the tubing, the connector having a burst pressure of at least 100 psi."

68.     The MedComp Products-At-Issue each are described by MedComp as including a "set," which contains, among other things, an "introducer needle," "Huber needles," a "blunt tip needle," "catheter locks," and "guidewire."  *See* Exhibits 5-11.

69.     Upon information and belief, based on the known characteristics of the products, including those described above, the non-coring needles included in the MedComp Products-At-Issue sets have a burst pressure of at least 100 psi.  As a further example, the CT Ports Tech Guide describes the "max pressure" for the Dignity® and Pro-Fuse® CT injectable ports as 300 psi for various needle gauge sizes.  *See* Exhibit 12.

70.     Upon information and belief, based on the known characteristics of the products, including those described above, the polymer tubing included in the MedComp Products-At-Issue sets has a burst pressure of at least 100 psi.  As a further example, the CT Ports Tech Guide describes the "max pressure" for the Dignity® and Pro-Fuse® CT injectable ports as 300 psi.  *See* Exhibit 12.

71.     Upon information and belief, based on the known characteristics of the products, including those described above, the connector included in the MedComp Products-At-Issue sets has an inner surface that affixes to an outer surface of the tubing and has a burst pressure of at least 100 psi.  As a further example, the CT Ports Tech Guide describes the "max pressure" for the Dignity® and Pro-Fuse® CT injectable ports as 300 psi.  *See* Exhibit 12.

72.     Claims 1-9 of the '639 patent further require that the polymer tubing and the connector each be "formed from a material substantially free of plasticizer."

73.     Upon information and belief, the polymer tubing and the connector included in the MedComp Products-At-Issue sets are formed from a material substantially free of plasticizer.  In fact, the MedComp Instructions For Use explicitly state, in describing the power injection procedure for use of its products, "[t]his device is not made with plasticizer Diethylhexylphthalate (DEHP)."  *See* Exhibit 13.

74.     Claims 1-12 of the '639 patent recite "flowing a fluid through the infusion set into the access port at a rate of at least 1 milliliter per second."  The access ports in the MedComp Products-At-Issue are designed to pass fluid at the claimed rate, and MedComp and the MedComp Products-At-Issue induce a medical professional to do so.  For example, the CT Ports Tech Guide describes the "maximum flow rate" for the Dignity® and Pro-Fuse® CT injectable ports, and the flow rates are either 2 milliliters per second or 5 milliliters per second, depending on the needle gauge size.  *See* Exhibit 12.  And each of the MedComp Products-At-Issue are described by MedComp as "allowing CT injections for diagnostic imaging at up to 5cc/sec at 300psi" or "allowing up to 5cc/sec power injection."  *See* Exhibits 5-11.

75.     Defendant has committed and continues to commit all of the above acts of infringement without license or authorization.

76.     Bard has complied with the requirements of 35 U.S.C. § 287 by, among other things, virtual marking its products with the '639 patent (*see* http://www.bardaccess.com/ip) and by giving actual notice to MedComp by, *inter alia*, service of this Complaint.

77.     As a result of Defendant's infringement of the '639 patent, Plaintiffs have suffered damages and will continue to suffer damages.

78.     Defendant's infringement of the '639 patent has been and continues to be willful and deliberate.

79.     Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.  Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Plaintiffs' patented inventions.  Upon information and belief, Defendant will continue to infringe the '639 unless permanently enjoined by this Court.

## COUNT II

## INFRINGEMENT OF THE '723 PATENT

80.     The allegations of paragraphs 1-79 are incorporated by reference as if fully set forth herein.

81.     Defendant has infringed, and continues to infringe, claims 1-8 of the '723 patent by making, using, offering for sale, selling, and/or importing into the United States, access port products, including the Dignity® Titanium port.

82.     The access ports that infringe the '723 patent include at least Dignity® Titanium ports made, marketed, distributed, sold, and/or offered for sale by MedComp throughout the United States and in this District.  These access ports include each and every limitation recited in claims 1-8.

83.    Claims 1-8 of the '723 patent recite "a metallic body defining a cavity accessible by inserting a needle through a septum, the metallic body including: a first side surface from which an outlet extends; a second side surface different from the first side surface, the second side surface having a concave portion."  The image below illustrates each of those external features (the septum and the cavity, not labeled below, are internal).

Dignity® Titanium CT Port



84.    Claims 1-8 of the '723 patent recite a "bottom surface bounded by a bottom perimeter including a concave portion."  That concave portion can be seen in the figure below.

Dignity® Titanium CT Port



85.    Claims 1-8 of the '723 patent further recite, for example, that "the bottom surface further including at least one alphanumeric message observable via imaging technology subsequent to implantation of the access port, the alphanumeric message identifying the access port as being power injectable."  That alphanumeric message can be seen in the figure below.

Dignity® Titanium CT Port



86.    Moreover, the Dignity® Titanium expressly contains "ink allow[ing] 'CT' to be visualized under X-ray."  *See* Exhibit 7.

87.    Defendant has committed and continues to commit all of the above acts of infringement without license or authorization.

88.    Bard has complied with the requirements of 35 U.S.C. § 287 by giving actual notice to MedComp by, *inter alia*, service of this Complaint.

89.    As a result of Defendant's infringement of the '723 patent, Plaintiffs have suffered damages and will continue to suffer damages.

90.    Bard has complied with the requirements of 35 U.S.C. § 287

91.    Defendant's infringement of the '723 patent has been and continues to be willful and deliberate.

92.    Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.  Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Plaintiffs' patented inventions.  Upon information and belief, Defendant will continue to infringe the '723 unless permanently enjoined by this Court.

## COUNT III

## INFRINGEMENT OF THE '663 PATENT

93.    The allegations of paragraphs 1-92 are incorporated by reference as if fully set forth herein.

94.    Defendant has infringed, and continues to infringe, claims 1-10 of the '663 patent by making, using, offering for sale, selling, and/or importing into the United States, access port

products, including its Dignity® products (*i.e.*, all of the MedComp Products-At-Issue except for the Pro-Fuse® CT Ports).

95.     The access ports that infringe the '663 patent include at least the Dignity® access ports made, marketed, distributed, sold, and/or offered for sale by MedComp throughout the United States and in this District.  These access ports include each and every limitation recited in claims 1-10.

96.     Claims 1-10 of the '663 patent explicitly recite "a septum having an upper surface and a bottom surface separated along a vertical axis of the port" and "a body defining a cavity accessible by inserting a needle through the septum."  The images below illustrate each of those external features (the bottom surface of the septum and the cavity, not labeled below, are internal).

Dignity® CT Port



Dignity® Mini Port



Dignity® Titanium CT Port



Pediatric Dignity® Mini Port



97.    Claims 1-10 of the '663 patent recite that the body includes "a first side surface from which an outlet stem extends; a second side surface different from the first side surface, the second side surface having a concave portion extending along the vertical axis, at least a portion of the concave surface positioned at the same location along the vertical axis as at least a portion of the cavity; and a bottom surface bounded by a bottom perimeter including a concave portion contiguous with the second side surface concave portion."  The images below illustrate each of these features and their relative positions.

Dignity® CT Port



Dignity® Mini Port



Dignity® Titanium CT Port



<u>Pediatric Dignity® Mini Port</u>



98.    Claims 1-10 of the '663 patent further recite that "the bottom surface includ[e] an identifier observable via imaging technology subsequent to implantation of the access port, the identifier identifying the access port as a power injectable port."  That identifier can be seen in the figures below (left to right: Dignity® Titanium CT Port, Dignity® Mini Port, Pediatric Dignity® Mini Port, and Dignity® CT Port).



99.    Moreover, the Dignity® products each expressly contain "[u]nique printing allow[ing] 'CT' to be visible under X-ray" or "ink allow[ing] 'CT' to be visualized under X-ray."  *See* Exhibits 5-10.

100.    Defendant has committed and continues to commit all of the above acts of infringement without license or authorization.

101.    Bard has complied with the requirements of 35 U.S.C. § 287 by giving actual notice to MedComp by, *inter alia*, service of this Complaint.

102.    As a result of Defendant's infringement of the '663 patent, Plaintiffs have suffered damages and will continue to suffer damages.

103.    Defendant's infringement of the '663 patent has been and continues to be willful and deliberate.

104.    Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against further infringement.  Defendant's wrongful conduct has caused and will continue to cause Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude others from making, using, selling, offering to sell, and/or importing Plaintiffs' patented inventions.  Upon information and belief, Defendant will continue to infringe the '663 unless permanently enjoined by this Court.

## COUNT IV

## INFRINGEMENT OF THE '052 PATENT

105.    The allegations of paragraphs 1-104 are incorporated by reference as if fully set forth herein.

106.    Defendant has infringed, and continues to infringe, claims 1-10 of the '052 patent by making, using, offering for sale, selling, and/or importing into the United States, access port products, including its Dignity® products (*i.e.*, all of the MedComp Products-At-Issue except for the Pro-Fuse® CT Ports).

107.    The access ports that infringe the '052 patent include at least the Dignity® access ports made, marketed, sold, and/or offered for sale by MedComp throughout the United States and in this District.  These access ports include each and every limitation recited in claims 1-10.

108.    Claims 1-10 of the '052 patent recite "a body defining a cavity accessible by inserting a needle through a septum."  The images below illustrate each of those external features (the cavity, not labeled below, is internal).

<u>Dignity® CT Port</u>



<u>Dignity® Mini Port</u>



<u>Dignity® Titanium CT Port</u>



<u>Pediatric Dignity® Mini Port</u>



109.    Claims 1-10 of the '052 patent recite that the body includes "a first side surface from which an outlet stem extends; a second side surface different from the first side surface, the second side surface having a concave portion; and a bottom surface bounded by a bottom perimeter including a concave portion contiguous with the second side surface concave portion." The images below illustrate each of these features.

34

Dignity® CT Port



Dignity® Mini Port



Dignity® Titanium CT Port



Pediatric Dignity® Mini Port



110.    Claims 1-10 of the '052 patent further recite that "the bottom surface includ[e] an identifier observable via imaging technology subsequent to implantation of the access port, the identifier identifying the access port as a power injectable port."  That identifier can be seen in the figures below (left to right: Dignity® Titanium CT Port, Dignity® Mini Port, Pediatric Dignity® Mini Port, and Dignity® CT Port).

    

111.    Moreover, the Dignity® products each are described by MedComp as containing

"[u]nique printing allow[ing] 'CT' to be visible under X-ray" or "ink allow[ing] 'CT' to be

visualized under X-ray."  *See* Exhibits 5-10.

112.    Defendant has committed and continues to commit all of the above acts of

infringement without license or authorization.

113.    Bard has complied with the requirements of 35 U.S.C. § 287 by giving actual

notice to MedComp by, *inter alia*, service of this Complaint.

114.    As a result of Defendant's infringement of the '052 patent, Plaintiffs have

suffered damages and will continue to suffer damages.

115.    Defendant's infringement of the '052 patent has been and continues to be willful

and deliberate.

116.    Under 35 U.S.C. § 283, Plaintiffs are entitled to a permanent injunction against

further infringement.  Defendant's wrongful conduct has caused and will continue to cause

Plaintiffs to suffer irreparable harm resulting from the loss of its lawful patent right to exclude

others from making, using, selling, offering to sell, and/or importing Plaintiffs' patented

inventions.  Upon information and belief, Defendant will continue to infringe the '052 unless permanently enjoined by this Court.

## COUNT V

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '160 PATENT

117.    The allegations of paragraphs 1-116 are incorporated by reference as if fully set forth herein.

118.    An actual and substantial controversy has arisen and now exists between the parties concerning whether Bard's manufacture, use, sale, offer for sale, or importation of its access port products, including the Bard Products-At-Issue, infringes any valid claim of the '160 patent, either directly or indirectly, literally, under the doctrine of equivalents, or otherwise.

119.    By way of example and without limiting the grounds of non-infringement that will be asserted, Bard's access port products, including the Bard Products-At-Issue, do not infringe because they do not contain a "housing comprising: a base defining at least one reservoir; and a flange adjacent to the at least one reservoir, the flange comprising an X-ray discernable material, a top surface, a bottom surface, and one or more voids extending through the X-ray discernable material of the flange from the top surface of the flange to the bottom surface of the flange."  Bard expressly reserves the right to assert additional grounds of non-infringement after having the ability to conduct discovery and the Court has construed the claims.

120.    Bard seeks a declaratory judgment that making, using, offering to sell, selling, and importing Bard's access port products, including the Bard Products-At-Issue, do not and will not infringe any valid claim of the '160 patent.

## COUNT VI

## DECLARATORY JUDGMENT OF INVALIDITY OF THE '160 PATENT

121.    The allegations of paragraphs 1-120 are incorporated by reference as if fully set forth herein.

122.    An actual and substantial controversy has arisen and now exists between the parties concerning the validity of the '160 patent.

123.    Claims 1-22 of the '160 patent are invalid because the purported inventions therein fail to meet the conditions for patentability specified in 35 U.S.C. §§ 101 *et seq.*, including but not limited to 35 U.S.C. §§ 102, 103, and 112, and nonstatutory common law doctrines.

124.    By way of example and without limiting the grounds of invalidity that will be asserted in this action, each claim of the '160 patent is invalid if construed as MedComp appears to be construing the claims in view of the following prior art:  Bard's prior invention of the POWERPORT® Implantable Port, "PORTS – Bard Access Systems," 2003; U.S. Patent No. 7,785,302; PowerPort Guidelines for CT Technologists, February 2007; FR 1,509,165; The Hickman® Subcutaneous Ports & Hickman®/Broviac® Catheters, 1992; and/or the knowledge of a person of ordinary skill in the art.

125.    Bard expressly reserves the right to assert additional grounds of invalidity after having the ability to conduct discovery.

126.    Bard seeks a declaratory judgment that each claim of the '160 patent is invalid.

## JURY DEMAND

127.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand a trial by jury of all issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in favor of Plaintiffs and against Defendant:

a.    A judgment that the '639, '723, '663, and '052 patents are infringed by Defendant's manufacture, offers to sell, sales, or uses within the United States, or importation into the United States, of products, including without limitation implantable port products, that practice one or more of the inventions claimed in the '639, '723, '663, and '052 patents;

b.    An order permanently enjoining Defendant, its affiliates and subsidiaries, and each of its officers, agents, servants, and employees and those acting in privity or concert with them, from making, using, offering to sell, selling, or importing products claimed in any of the claims of the '639, '723, '663, and '052 patents, and from causing or encouraging others to use, sell, offer for sale, or import products that infringe any claim of the '639, '723, '663, and '052 patents, including without limitation implantable port products, until after the expiration dates of the '639, '723, '663, and '052 patents, including any extensions and/or additional periods of exclusivity to which Plaintiffs are or may become entitled;

c.    An order awarding damages under 35 U.S.C. § 284 in an amount sufficient to compensate Plaintiffs for their damages arising from infringement by Defendant, including, but not limited to, lost profits and/or a reasonable royalty, together with pre-judgment and post-judgment interest, and costs;

d.    An order awarding treble damages for willful infringement by Defendant, pursuant to 35 U.S.C. § 284;

e.      An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding the imposition of a permanent injunction;

f.      An order declaring that the manufacture, use, sale, offer of sale, or importation of Bard's access port products, including (1) the POWERPORT® Implantable Port, (2) the POWERPORT® M.R.I. Implantable Port, (3) the POWERPORT® isp Implantable Port, (4) the POWERPORT® Slim Implantable Port, (5) the POWERPORT® isp M.R.I.® Implantable Port, (6) the POWERPORT® duo M.R.I.® Implantable Port, (7) the POWERPORT® CLEARVUE® isp Implantable Port, (8) the POWERPORT® CLEARVUE® Slim Implantable Port, (9) the POWERPORT® VUE Implantable Port, and (10) the POWERPORT® VUE M.R.I.® Implantable Port, do not infringe any valid claim of the '160 patent.

g.      An order declaring each claim of the '160 patent invalid;

h.      An order enjoining MedComp from enforcing the '160 patent;

i.      A judgment declaring that this case is exceptional and awarding Plaintiffs their reasonable costs and attorneys fees pursuant to 35 U.S.C. § 285; and

j.      Such other relief as this Court or a jury may deem proper and just under the circumstances.

Dated:  July 7, 2017

Respectfully submitted,

/s/ *Kimberly Neville*
Bryon J. Benevento (5254)
Kimberly Neville (9067)
DORSEY & WHITNEY LLP
Kearns Building
136 South Main Street, Suite 1000
Salt Lake City, UT 841010-1655
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
benevento.bryon@dorsey.com
neville.kimberly@dorsey.com


Steven C. Cherny (*pro hac vice pending*)
Joseph Milowic III (*pro hac vice pending*)
Matthew A. Traupman (*pro hac vice pending*)
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
stevencherny@quinnemanuel.com
josephmilowic@quinnemanuel.com
matthewtraupman@quinnemanuel.com

*Attorneys for Plaintiffs*