# ANTITRUST LAW DEVELOPMENTS (EIGHTH)

## Volume I

Editorial Board

Darren S. Tucker
*Chair*

Robert E. Bloch
Noah A. Brumfield
Robert Mahini
Kimberley Piro
Stuart C. Plunkett
Shelley J. Webb

ABA SECTION OF ANTITRUST LAW
Promoting Competition Protecting Consumers

ABA
Defending Liberty
Pursuing Justice

customers were "locked in" by their purchase of the foremarket product,[98] one district court rejected the relevance of a change in policy outright.[99] Also, at least one other district court has upheld monopoly power allegations based on evidence of switching costs even where there was no change in policy,[100] and others have looked at the ability of customers to accurately forecast contract costs (i.e., life-cycle pricing), concluding that the requisite monopoly power may be shown where the total costs cannot be completely known and forecast accurately.[101]

## C. Acquiring, Enhancing, or Maintaining Monopoly Power through Exclusionary Conduct

### 1. *The Exclusionary Conduct Requirement*

Possession of monopoly power does not alone violate Section 2. The offense of monopolization has a second element: "the willful acquisition or maintenance of [monopoly] power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."[102] As the Supreme Court explained in *Verizon Communications v. Law Offices of Curtis V. Trinko, LLP*:[103]

---

98. *See, e.g.*, Harrison Aire, Inc. v. Aerostar Int'l, 423 F.3d 374, 384 (3d Cir. 2005) (finding that "unlike . . . in *Kodak*," plaintiff "failed to produce evidence of supracompetitive pricing, of dominant aftermarket share, of information costs preventing lifecycle pricing, or of a change in aftermarket policy targeting locked-in customers"); SMS Sys. Maint. Servs. v. Dig. Equip. Corp., 188 F.3d 11, 19 (1st Cir. 1999) (finding no aftermarket because "the transparency of [the] allegedly monopolistic policy represents a salient departure from the *Kodak* scenario"); Alcatel USA, Inc. v. DGI Techs., 166 F.3d 772, 777, 781-84 (5th Cir. 1999) (finding defendant software license always limited use to manufacturer-provided equipment); PSI Repair Servs. v. Honeywell, Inc., 104 F.3d 811, 820 (6th Cir. 1997) (finding *Eastman Kodak* theory inapplicable "when the defendant has not changed its policy after locking-in some of its customers" and "has been otherwise forthcoming about its pricing structure and service policies"); *accord* Dig. Equip. Corp. v. Uniq Dig. Techs., 73 F.3d 756, 763 (7th Cir. 1996); Lee v. Life Ins. Co., 23 F.3d 14, 19-20 (1st Cir. 1994); ID Sec. Sys. Can. v. Checkpoint Sys., 249 F. Supp. 2d 622, 642 (E.D. Pa. 2003); Universal Avionics Sys. Corp. v. Rockwell Int'l Corp., 184 F. Supp. 2d 947, 956 (D. Ariz. 2001), *aff'd*, 52 F. App'x 897 (9th Cir. 2002).

99. *See* Red Lion Med. Safety v. Ohmeda, Inc., 63 F. Supp. 2d 1218, 1230 (E.D. Cal. 1999) (refusing to follow *PSI Repair*, *Digital Equipment*, and *Lee* because "*Kodak I* does not hold that an aftermarket claim is contingent on a change in a manufacturer's part or service policy").

100. Collins v. Int'l Dairy Queen, 939 F. Supp. 875, 883 (M.D. Ga. 1996) (finding monopoly power because evidence of "excessive costs and potential losses associated with purchasing another franchise" effectively locked franchisees into their relationship with Dairy Queen).

101. *See, e.g.*, Xerox Corp. v. Media Scis. Int'l, 660 F. Supp. 2d 535, 547-50 (S.D.N.Y. 2009) (granting plaintiff's motion for summary judgment on defendant's counterclaims of monopolization in replacement color printer ink sticks because defendant was unable to create triable issues of fact as to whether consumers were "locked-in" to using Xerox color printers due to the high costs of acquiring the "lifecycle price" of the equipment); *ID Sec. Sys.*, 249 F. Supp. 2d at 642 (finding "market imperfections" such as high information costs and high switching costs "could create a less responsive connection" between foremarket and aftermarket); *Universal Avionics*, 184 F. Supp. 2d at 954, 955 ("[I]n very limited circumstances it is possible for 'switching costs,' 'information costs,' and a 'lock in' to create a potential for aftermarket power in the derivative aftermarkets" for manufacturer's own equipment; as to information costs, "[a] substantial number of . . . customers must be too ignorant of 'lifecycle' prices to protect themselves by judicious interbrand comparisons or by contract before they become locked in.").

102. United States v. Grinnell Corp., 384 U.S. 563, 570-71 (1966).

103. 540 U.S. 398 (2004).