**Phillip E. Areeda**
*Late Langdell Professor of Law*
Harvard University

**Herbert Hovenkamp**
*Ben V. & Dorothy Willie*
*Professor of Law*
University of Iowa

**Volume III**
**Fourth Edition**

# Antitrust Law

An Analysis of Antitrust Principles
and Their Application

Wolters Kluwer

economical use of enforcement resources. It would (1) deter baseless suits; (2) prolong few, if any, because it would be a rare if not nonexistent case in which the defendant could make no plausible claim of inevitability or superior skill; and (3) shorten the trial of cases where clear proof of bad conduct eliminates the superior skill issue. In addition, requiring proof of bad conduct reduces somewhat the danger that the prospect of antimonopoly litigation would reduce the incentives for achieving scale economies or superior skill.

How well the conduct requirement does or should protect superior skill depends on the answers to further questions: (1) How confident is the tribunal in its assessment of monopoly power? (2) What is the test of unacceptable conduct? (3) How clear and significant must its causal relationship with monopoly be? (4) May the answers to either of those questions be varied with the nature of the sanctions sought? We now turn to those questions.

## ¶651. Monopolizing Conduct Defined

This Paragraph first gives a very general definition of unlawful exclusionary conduct under §2 of the Sherman Act, considers some alternatives, and then explains what is and is not involved in assessing conduct under the given definition.

**651a. General definition of anticompetitive exclusion.** We define monopolistic conduct as acts that

> (1) are reasonably capable of creating, enlarging or prolonging monopoly power by impairing the opportunities of rivals; and
> (2) either (2a) do not benefit consumers at all, or (2b) are unnecessary for the particular consumer benefits claimed for them, or (2c) produce harms disproportionate to any resulting benefits.

In addition, the practice must be reasonably susceptible to judicial control, which means that the court must be able to identify the conduct as anticompetitive and fashion either an appropriate deterrent or an equitable remedy likely to improve competition.[1]

**¶651.** n.1. *See* Herbert Hovenkamp, *The Harvard and Chicago Schools and the Dominant Firm, in* How the Chicago School Overshot the Mark: The Effect of Conservative Economic Analysis on U.S. Antitrust 109 (Robert Pitofsky ed., Oxford Univ. Press 2008); Herbert Hovenkamp, *Exclusion and the Sherman Act,* 72 U. Chi. L. Rev. 147 (2005). In *Microsoft* the

Clause (1) of the test ensures that the conduct is both exclusionary and "substantial" in the sense that it is reasonably capable of creating or prolonging monopoly. Clause (2a) deals with the easiest case for identifying anticompetitive exclusion — namely, where no consumer benefit whatsoever can be shown. Clause (2b) deals with situations where a less restrictive alternative might produce equivalent benefits, and clause (2c) deals with the small number of situations thought to require some kind of balancing of harms and gains. For example, in a reasonably close predatory pricing case, one may have to determine whether monopoly pricing during a post-predation "recoupment" period is sufficient to offset any short-run benefits that accrue to consumers during a period of very low prices.[2]

**651b. Alternative definitions.** The given definition of monopolistic conduct is very general, in the sense that it does not provide precise tests for specific practices, such as improper patent infringement suits[3] or predatory pricing.[4] We leave those essential details for later. Numerous definitions of exclusionary conduct

---

D.C. Circuit defined a test of equivalent generality, although in considerably more detail, and including allocation of proof burdens:

> *First*, to be condemned as exclusionary, a monopolist's act must have an "anticompetitive effect." That is, it must harm the competitive process and thereby harm consumers. In contrast, harm to one or more competitors will not suffice.
>
> *Second*, the plaintiff, on whom the burden of proof of course rests, . . . must demonstrate that the monopolist's conduct indeed has the requisite anticompetitive effect. . . . [I]n a case brought by the Government, it must demonstrate that the monopolist's conduct harmed competition, not just a competitor.
>
> *Third*, if a plaintiff successfully establishes a prima facie case under §2 by demonstrating anticompetitive effect, then the monopolist may proffer a "procompetitive justification" for its conduct. . . . If the monopolist asserts a procompetitive justification — a nonpretextual claim that its conduct is indeed a form of competition on the merits because it involves, for example, greater efficiency or enhanced consumer appeal — then the burden shifts back to the plaintiff to rebut that claim . . .
>
> *Fourth*, if the monopolist's procompetitive justification stands unrebutted, then the plaintiff must demonstrate that the anticompetitive harm of the conduct outweighs the procompetitive benefit. . . .
>
> *Finally*, in considering whether the monopolist's conduct on balance harms competition and is therefore condemned as exclusionary for purposes of §2, our focus is upon the effect of that conduct, not upon the intent behind it. Evidence of the intent behind the conduct of a monopolist is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct.

*United States v. Microsoft Corp.*, 253 F.3d 34, 58–59 (D.C. Cir.), *cert. denied*, 534 U.S. 952 (2001) (to the extent it is relevant, H.H. was consulted by the United States and some state AGs). See ¶617.

2. *See Brooke Grp. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) (assessing these requirements); *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312 (2007) (reiterating them in a case involving allegedly predatory buying). See generally Ch. 7C.

3. See ¶706.

4. See Ch. 7C.