UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| C.R. BARD, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL COMPONENTS, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MEDCOMP'S MOTION TO COMPEL DOCUMENTS WITHHELD AS PRIVILEGED (DOC. NO. 949)** <br><br> Case No. 2:17-cv-00754 <br><br> District Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Daphne A. Oberg |

In this patent infringement action involving implantable vascular access ports, Defendant Medical Components, Inc. ("MedComp") has filed a motion to compel withheld documents.[1] MedComp seeks the production of fifty-eight documents Plaintiffs C.R. Bard, Inc., et al. (collectively "Bard") designated as privileged.[2] Although MedComp does not challenge Bard's asserted privileges, MedComp argues its claim of inequitable conduct justifies production of the documents. Specifically, MedComp asserts that its allegations of inequitable conduct trigger application of the crime-fraud exception to any claim of privilege by Bard.[3] Additionally, MedComp argues any work-product protection is overcome because: (1) MedComp has a substantial need for the documents to prove its inequitable conduct counterclaim; (2) Bard

---

[1] (*See* MedComp's Requested Long Form Mot. to Compel Docs. Withheld as Privileged ("Mot."), Doc. No. 949.)

[2] (*See* Ex. 6 to Mot., Emails 2, Doc. No. 949-6.)

[3] (Mot. 3, Doc. No. 949.)

exclusively controls the documents; and (3) MedComp is unable to obtain any substantially equivalent material.[4]

MedComp's motion is denied on procedural and substantive grounds.[5] Substantively, MedComp has not shown the crime-fraud exception or an exception to work-product protection applies and, procedurally, MedComp has not complied with the timing requirements in the local rules.

## BACKGROUND

The document discovery period closed in this action long ago. In privilege logs first exchanged in 2019, Bard set forth the documents it designated as privileged and withheld from production. Indeed, on September 30, 2019, MedComp made its initial challenges to Bard's privilege designations.[6] On December 12, 2019, the court referred the parties' privilege disputes to a special master.[7] The special master completed her privilege review by March 10, 2020[8]—almost four years ago. The special master's privilege determinations were then adopted,[9] and on

---

[4] (*Id.* at 8–9.)

[5] Although MedComp requested oral argument on this motion, (*see* Request for Oral Arg. on Mot., Doc. No. 986), oral argument is unnecessary; the motion is decided based on the parties' briefing. *See* DUCivR 37-1(b)(5)(B).

[6] (*See* Def.'s Notice of Intent to Submit Privilege Challenges, Doc. No. 433.)

[7] (*See* Order Referring Case to Special Master, Doc. No. 474.)

[8] (*See* Special Master R. & R. Nos. 1 & 2, Doc. Nos. 518 & 526.)

[9] (*See* Order Affirming and Adopting Special Master's R. & R. Nos. 1 and 2, Doc. No. 537.)

March 3, 2021, the court overruled Bard's objections[10] to that decision.[11]  Notably, MedComp did not object to the court's adoption of the special master's reports.

On July 13, 2021, MedComp moved for leave to amend its pleading to assert more fulsome inequitable conduct allegations.[12]  On October 20, 2021, MedComp was granted leave to replead the affirmative defense of inequitable conduct in connection with the '639 patent.[13]  Shortly thereafter, MedComp filed its Fifth Amended Answer and Fifth Amended Counterclaims.[14]  Significantly, in connection with an earlier effort by MedComp to amend its inequitable conduct counterclaim, this court indicated the proceedings before the special master on privilege "ha[d] no bearing on the [] amendment since the claims and allegations in the proposed [pleading] do not depend on any materials connected to those proceedings."[15]

On April 4, 2022, all proceedings in this action were stayed pending the Federal Circuit's resolution of a related case between the parties.[16]  That stay was eventually lifted on May 3, 2023.[17]  Despite the fact that MedComp has been asserting inequitable conduct claims since at least November 3, 2021, it did not immediately challenge the privilege designations on the

---

[10] (*See* Bard's Obj. to Magistrate Judge Decision, Doc. No. 539.)

[11] (*See* Docket Text Order, Doc. No. 644.)

[12] (*See* MedComp's Renewed Mot. for Leave to File Fifth Am. Ans. and Countercls., Doc. No. 712.)

[13] (*See* Min. Order, Doc. No. 794.)

[14] (*See* Def.'s Fifth Am. Ans. and Countercls., Doc. No. 810 (sealed).)

[15] (*See* R. & R. 12, Doc. No. 578.)

[16] (*See* Min. Order, Doc. No. 881.)

[17] (*See* Docket Text Order, Doc. No. 903.)

fifty-eight documents at issue or assert the crime-fraud exception applied. It appears that on February 14, 2022, MedComp first expressed concern that Bard improperly shielded some documents on its privilege log from discovery, given MedComp's inequitable conduct allegations.[18] In light of this concern, MedComp asked Bard to review its privilege designations—a request Bard rejected.[19] MedComp then specifically identified these fifty-eight privileged documents in the supplemental interrogatory response it served on February 25, 2022.[20] Even then, MedComp did not then seek to compel production of these documents. It was not until August 28, 2023, that MedComp and Bard again turned to these documents.[21] Shortly thereafter, on September 8, 2023, MedComp filed its motion to compel.

## ANALYSIS

At the outset, while MedComp raises substantive privilege-related questions in its motion, the motion itself also implicates some procedural issues. The substantive questions are addressed first below, followed by the procedural issues.

---

[18] (*See* Ex. 2 to Mot., Emails 1, Doc. No. 949-2.)

[19] (*See* Ex. 3 to Mot., Emails 1, Doc. No. 949-3.)

[20] (*See* Ex. 6 to Mot., MedComp's Second Suppl. Objs. and Resps. to Bard's Seventh Set of Interrogs., Doc. No. 949-6 at 22.)

[21] (*See* Mot. 10, Doc. No. 949 (indicating the parties initially conferred by Zoom once the stay was lifted).)

### A. *MedComp is Not Entitled to Relief*

MedComp's motion is denied because MedComp has not shown the crime-fraud exception applies. MedComp suggests its allegation of inequitable conduct by Bard is enough to pierce attorney-client privilege with the crime-fraud exception.[22] It is not.

As Bard correctly notes, the Federal Circuit has made clear that, in order to assert the crime-fraud exception, the moving party must establish something called "Walker Process" fraud—i.e., common-law fraud.[23] To fulfill this requirement, MedComp must establish:

> (1) a representation of material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation."[24]

The Federal Circuit has also determined that "[t]o invoke the crime-fraud exception, a party challenging the attorney-client privilege must make a prima facie showing that the communication was made 'in furtherance of a crime or fraud.'"[25] In addition, a finding of common-law fraud in the patent context "must be based on independent and clear evidence of deceptive intent together with a clear showing of reliance."[26] MedComp falls far short of meeting those requirements.

---

[22] (*See id.* at 3 ("MedComp's allegations of inequitable conduct and fraud warrant production of the documents at issue under the crime/fraud exception to the attorney-client privilege.").)

[23] *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1358–59 (Fed. Cir. 2011).

[24] *See id.* at 1359 (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000)).

[25] *In re Spalding*, 203 F.3d at 807.

[26] *Unigene Labs.*, 655 F.3d at 1359–60.

While MedComp's inequitable conduct allegations meet the pleading standard for such a claim (as the district court previously noted), clearing that hurdle is insufficient in itself to establish the crime-fraud exception as set forth by the Federal Circuit. As a threshold matter, if meeting the pleading standard were enough, in every patent action where an inequitable conduct allegation survived a motion to dismiss, the assertion of attorney-client privilege over documents and communications related to patent prosecution would be vitiated. MedComp has not cited any legal authority supporting such a broad conclusion.[27] In fact, in a motion filed in June 2019, MedComp expressly acknowledged the vast difference between pleading an inequitable conduct claim and proving one.[28]

In the few cases MedComp cites in which privilege was overcome under the crime-fraud exception, the courts had already determined inequitable conduct had occurred, as a matter of fact and law. For example, in *Nobelpharma AB v. Implant Innovations, Inc.*,[29] the district court had entered judgment as a matter of law against the patentee because one of the inventors wrote a book on the implants at issue.[30] But when the patent application was filed, the other inventor

---

[27] To the contrary, the Federal Circuit has recognized that piercing attorney-client privilege is an "extreme remedy." *See id.* at 1359.

[28] (*See, e.g.*, Def's Reply in Supp. of Mot. for Reconsideration of Order Granting Mot. to Dismiss 1–2, Doc. No. 287 (redacted) ("[T]he Federal Circuit clearly distinguished between pleading inequitable conduct—allegations under Rule 9(b) sufficient to support a reasonable inference of inequitable conduct—and the standard of clear and convincing evidence needed to establish liability at trial: [i]n contrast to the pleading stage, to prevail on the merits, the accused infringer must prove both materiality and intent by clear and convincing evidence. Whereas an inference of deceptive intent must be reasonable and drawn from a pleading's allegations of underlying fact to satisfy Rule 9(b), this inference must be 'the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard.'") (internal citations omitted).)

[29] 141 F.3d 1059 (Fed. Cir. 1998).

[30] *Id.* at 1062.

deleted all reference to the book.[31] The district court concluded this failure to disclose invalidated the patent—and only after making that finding did it apply the crime-fraud exception.[32] No equivalent findings have been made in this action.

Similarly, in *Intellect Wireless, Inc. v. HTC Corp.*[33] the court applied the crime-fraud exception to overcome a privilege assertion only after the court had determined the plaintiff had, in fact, engaged in inequitable conduct—and the Federal Circuit had affirmed that determination.[34] Likewise, in *Micron Technology, Inc. v. Rambus Inc.*,[35] the Federal Circuit affirmed the district court's piercing of attorney-client privilege based on the plaintiff's prima facie presentation of evidence to establish the defendant violated California Penal Code, which made it a misdemeanor to destroy records that were about to be produced in a trial.[36] According to the Federal Circuit, the district court's conclusion that the plaintiff established the defendants were destroying documents in order to keep them from being produced (as advised by its litigation counsel) was correct and was sufficient to support the application of the crime-fraud exception.[37]

MedComp comes nowhere close to matching the standards in any of these cases—or addressing the "Walker Process" standards established by the Federal Circuit. In fact, MedComp

---

[31] *Id.*

[32] *Id.* at 1062–63. The district court's decision was affirmed by the Federal Circuit. *Id.* at 1066.

[33] No. 09 C 2945, 2014 U.S. Dist. LEXIS 62274 (N.D. Ill. May 6, 2014) (unpublished).

[34] *Id.* at *4–5.

[35] 645 F.3d 1311 (Fed Cir. 2011).

[36] *Id.* at 1329–30.

[37] *See id*.

fails to even mention the "Walker Process" standard in its motion. Accordingly, on its merits, MedComp's motion to compel based on the crime-fraud exception is denied.

In addition, MedComp's work-product argument fails. As an initial matter, MedComp has not even identified which of the documents it challenges were designated as protected by the work-product doctrine. Nor has MedComp addressed whether any of those same documents were also withheld under attorney-client privilege. In any event, MedComp's argument seems to be that because these (unidentified) documents may help MedComp prove its inequitable conduct allegations, any work-product protection is overcome. But MedComp has presented no legal authority supporting this broad position. In litigation, parties must nearly always prove their cases without access to their opponents' privileged documents. MedComp presents no basis for this circumstance to be treated differently—it does not appear singular or unique.

For all these reasons, MedComp's motion to compel documents subject to the work-product doctrine and attorney-client privilege is denied. MedComp's motion contains many other arguments and observations which are either irrelevant or tangential to the inequitable conduct issue. As such, they are unnecessary to address.

### B. MedComp's Compliance with Local Rules of Civil Procedure

Even if MedComp's motion were substantively meritorious, it would be denied on procedural grounds. Although Bard did not raise procedural challenges to MedComp's motion, the motion does not comply with Rule 37-1 of the Local Rules of Civil Practice. First, to encourage the prompt resolution of discovery disputes, Rule 37-1(a)(2) requires a party to send a "prompt written communication" to the opposing party identifying the issue and requesting a meeting before a discovery motion can be filed.[38] As noted above, although Bard's privilege

---

[38] *See* DUCivR 37-1(a)(2)(A)–(B).

logs were prepared and served no later than 2019, and MedComp gave notice of its amended inequitable conduct allegations on July 13, 2021[39] (and served its amended pleading on November 3, 2021), MedComp first identified the specific documents of concern to Bard on February 25, 2022.[40] This amounts to a delay of more than 110 days from MedComp's service of its amended inequitable conduct counterclaims—and a delay of more than two years from Bard's service of its privilege log. This delay is problematic. Courts in this district have concluded a delay of nearly that same length (i.e., 140 days) was not prompt under Rule 37-1.[41]

In addition, under Rule 37-1(b)(2)(C), any discovery motion must be filed "no later than 45 days after the [required] prompt written communication in 37-1(a)(2) was sent to opposing counsel." Failure to do so "may result in automatic denial of the motion."[42] Here, the "prompt" written communication was sent, at the latest, on February 25, 2022, when MedComp served its supplementary interrogatory response in which it specifically identified the fifty-eight documents

---

[39] (*See* MedComp's Renewed Mot. for Leave to File Fifth Am. Ans. and Countercls., Doc. No. 712, Ex. A, Doc. No. 712-1 (sealed).)

[40] (*See* Ex. 2 to Mot., Emails 1, Doc. No. 949-2; Ex. 6 to Mot., MedComp's Second Suppl. Objs. and Resps. to Bard's Seventh Set of Interrogs., Doc. No. 949-6 at 22.)

[41] *Ellis v. Salt Lake City Corp.*, No. 2:17-cv-245, 2022 U.S. Dist. LEXIS 176772, at *5–7 (D. Utah Sept. 27, 2022) (unpublished); *see also Wardley v. McLachlan*, No. 2:21-cv-00128, 2023 U.S. Dist. LEXIS 27618, at *3–8 (D. Utah Feb. 16, 2023) (unpublished) (concluding a ten-month delay from the date the privilege log was served until the first communication was not "prompt" and denying the motion on that ground).

[42] DUCivR 37-1(b)(2)(C). Perhaps MedComp could argue its most fulsome written communication was not until August 29, 2023. (*See* Ex. 6 to Mot., Emails 1, Doc. No. 949-6.) Arguably, that may help MedComp regarding the 45-day deadline, but it also accentuates MedComp's lack of promptness in meeting the written communication requirement under Rule 37-1. *See* DUCivR 37-1(a)(2).

it raised concerns about during the parties' February 14, 2022 meeting. However, MedComp did not file its motion to compel until September 8, 2023—effectively six months later.[43]

While the court has discretion to overlook some requirements of Rule 37-1,[44] use of this discretion is unwarranted here. MedComp was in a position to raise these issues long before September 8, 2023. In fact, in its motion, MedComp acknowledges it has "diligently sought discovery on this issue [of inequitable conduct] since April of 2018."[45] And MedComp long sought to amend its inequitable conduct allegations. It filed a proposed copy of its Fifth Amended Answer, which included inequitable conduct allegations, on July 13, 2021, with detailed citations to the documents and other discovery produced in this action.[46] Certainly, in preparing its amended inequitable conduct allegations, MedComp had reviewed the discovery it had received—and should have reviewed the list of documents withheld by Bard. Indeed, in its motion, MedComp cites to a May 16, 2018, hearing at which it told the court the privilege issue was even then "sensitive" because MedComp was raising an inequitable conduct claim.[47] At latest, when MedComp was preparing its amended allegations, it should have uncovered any

---

[43] Although the actual time period is close to nineteen months, because the case was stayed from April 4, 2022, to May 3, 2023, there was a six-month period in which MedComp could have filed its motion.

[44] *See, e.g.*, *Martin v. SGT, Inc.*, No. 2:19-cv-00289, 2022 U.S. Dist. LEXIS 45646, at *15–16 (D. Utah Mar. 14, 2022) (unpublished) (recognizing that although judges must follow local rules, they have discretion to apply and interpret them, and concluding a magistrate judge did not act contrary to law when he considered the merits of a motion that might have been, but likely was not, governed under DUCivR37-1).

[45] (*See* Mot. 4, Doc. 949.)

[46] (*See* Ex. A to MedComp's Renewed Mot. for Leave to File Fifth Am. Ans. and Countercls., Proposed Fifth Am. Ans. and Countercls. (redacted) ¶¶ 181–262, Doc. No. 712-1.)

[47] (*See* Mot. 6, Doc. No. 949 (quoting Ex. 5 to Mot., Tr. of Hr'g (May 17, 2019) 28:16-18, Doc. No. 949-5).)

issues with Bard's privilege designations and raised the potential application of the crime-fraud exception.

But by now, fact discovery has been completed and expert discovery is well underway. MedComp has already submitted its opening invalidity expert reports and Bard's rebuttal reports are due soon. In addition, MedComp has already served its opening expert reports *on inequitable conduct*.[48] Reexamining Bard's privilege designations at this late date, with the expectation (by MedComp) that additional documents may be produced could impact reports which have already been exchanged and rebuttal reports which are in progress. It will also further delay a merits determination in this nearly seven-year-old action. Moreover, nowhere in its motion has MedComp asserted it was precluded from seeking discovery concerning its inequitable conduct allegations from Bard or from any of the individuals it alleges, in its amended pleading, were aware of or participated in the inequitable conduct. Given these circumstances, MedComp's procedural missteps cannot be excused. MedComp's motion is also denied for failure to comply with the timing requirements of Rule 37-1.[49]

---

[48] (*See* Pls.' Form Mot. to Extend Deadline to Respond to MedComp's Expert Ops. Concerning Inequitable Conduct 2, Doc. No. 768 ("[O]n September 10th, MedComp served five expert reports that in whole or part contain opinions relating to MedComp's inequitable conduct allegations.").)

[49] *See Ellis*, 2022 U.S. Dist. LEXIS 176772, at *5–7; *Wardley*, 2023 U.S. Dist. LEXIS 27618, at *3–8; DUCivR 37-1(b)(2)(C).

## CONCLUSION

Because MedComp has failed to show the crime-fraud exception or any exception to the work-product doctrine applies and where MedComp has not complied with the timing requirements in the local rules, MedComp's motion[50] is denied.

DATED this 14th day of March, 2024.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[50] (Doc. No. 949.)