|                                                                                                                  |                                                                                                                                                                                                                                                            |
| ---------------------------------------------------------------------------------------------------------------- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
| UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH<br>CENTRAL DIVISION                                                                                                                                                                                                                                         ||
| C.R. BARD, INC.; BARD PERIPHERAL VASCULAR, INC.; and BARD ACCESS SYSTEMS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MEDICAL COMPONENTS, INC., <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO COMPEL EXPERT REPORT DRAFT (DOC. NO. 1061), AND GRANTING PLAINTIFFS' MOTION TO COMPEL DATA SUPPORTING EXPERT REPORT (DOC. NO. 1064)** <br><br> Case No. 2:17-cv-00754 <br><br> District Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiffs (collectively, "Bard") have filed two motions relating to one of Defendant Medical Components' ("MedComp") expert reports. Bard filed a motion to compel production of a draft version of the report, seeking to evaluate whether MedComp's counsel impermissibly prepared portions of the report.[1] Bard also filed a motion to compel production of the data supporting the report, alleging MedComp failed to produce the formulas its expert used in her damages calculations.[2] After holding a hearing on these motions, the court took them under advisement.[3] As explained below, Bard's motion to compel a draft version of the report is denied, because Bard provides an insufficient basis to call into question the integrity of the expert report. However,

---

[1] (*See* Pls.' Short Form Mot. to Compel Expert Rep. Draft ("Mot. to Compel Draft Rep.") 1, Doc. No. 1061.)

[2] (*See* Pls.' Short Form Mot to Compel Data Supporting Damages Expert Rep. ("Mot. to Compel Data"), Doc. No. 1064.)

[3] (*See* Min. Entry, Doc. No. 1099.)

1

Bard's motion to compel data supporting the report is granted, because Bard is entitled to the facts and data MedComp's expert relied on in forming her opinion.

## ANALYSIS

### I. Bard's motion to compel a draft version of the report is denied.

MedComp served the expert report at issue on August 6, 2024, and the report's signature page indicates the expert signed it that same day.[4]  On August 4—two days before MedComp's expert signed her report—the expert sustained a severe medical injury, which affected her ability to complete "mentally taxing or stressful events."[5] Because MedComp's expert signed her report two days after her injury, Bard seeks production of the "operative version" of the report from before the expert's injury, to assess "whether portions of [her] report were prepared while she was impaired."[6]  While Bard acknowledges draft expert reports are typically protected work product, it contends draft reports are discoverable "when counsel is substantively involved in drafting an expert report, as appears to be the case here."[7]

MedComp responds that production of the draft is unnecessary because, at the time of the expert's injury, her report was already "substantially complete, subject to [] checking her citations for correctness, [] resolving formatting issues, and [] inserting a

---

[4] (*See* Mot. to Compel Draft Rep. 1, Doc. No. 1061.)

[5] (*See id.*; *see also* Def.'s Resp. to Pls.' Mot. to Compel Expert Rep. Draft ("Opp'n to Mot. to Compel Draft Rep.") 1, Doc. No. 1079 (same).)

[6] (Mot. to Compel Draft Rep. 1–2, Doc. No. 1061.)

[7] (*Id.* at 2 (citing *Gerke v. Travelers Cas. Ins. Co. of Am.*, 289 F.R.D. 316, 330 (D. Or. 2013)).)

Table of Contents."[8]  MedComp also states the expert reviewed her report "[i]n the days and weeks following the August 6 submission of [her report] and found no substantive issues."[9]  MedComp further claims that at the time of her injury, the expert "was not then aware that the extent of her injuries would require a lengthy recovery time."[10]  Finally, MedComp claims "Bard's concern regarding [the expert's] mental capacity on August 6 can be easily resolved through her submission of an Amended Report."[11]

Under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, an expert report must be "prepared and signed by the [expert] witness."[12]  Draft versions of expert reports are protected by the work product doctrine.[13]  However, some courts have permitted discovery of draft expert reports when there is evidence an attorney drafted portions of the report or otherwise "commandeered the expert's function."[14]  Other

---

[8] (Opp'n to Mot. to Compel Draft Rep. 1, Doc. No. 1079.)

[9] (*Id.*)

[10] (*Id.* (explaining MedComp did not learn until September 3 that the expert's physician advised her to avoid "mentally taxing or stressful events," and "MedComp's counsel informed Bard's counsel of this development [on] September 4").)

[11] (*Id.* at 2.)  This amended report is the subject of MedComp's motion for leave to serve amended report.  (*See* Def.'s Short Form Mot. for Leave to Serve Am. Expert Rep., Doc. No. 1083.)

[12] Fed. R. Civ. P. 26(a)(2)(B).

[13] Fed. R. Civ. P. 26(b)(4)(B).

[14] *See, e.g.*, *Gerke*, 289 F.R.D. at 328 (permitting discovery of draft expert report in light of deposition testimony and substantive inconsistencies in the report suggesting counsel authored portions of the report).

courts disagree, holding Rule 26 precludes discovery of draft expert reports even if there is evidence an attorney participated in drafting the report.[15]

Even assuming evidence of an attorney's participation in drafting an expert report could nullify work product protection of draft reports, Bard is not entitled to the draft it seeks. Bard has simply not provided evidence of attorney participation. In *Gerke v. Travelers Casualty Insurance Co. of America*[16] (the case Bard relies on), the District of Oregon permitted discovery of a draft expert report because the expert's deposition testimony suggested counsel authored portions of the report and the report contained opinions about a truck the expert had never inspected.[17] But Bard does not identify anything in MedComp's expert's report suggesting attorney participation in drafting the report. Indeed, when asked at the hearing whether anything in the report suggested MedComp's counsel drafted any of it, Bard's counsel answered "we don't know." Bard bases its entire argument on the fact that MedComp's expert signed her report two days

---

[15] *See, e.g.*, *U.S. CFTC v. Newell*, 301 F.R.D. 348, 351–52 (N.D. Ill. 2014) ("respectfully disagree[ing]" with *Gerke*, and explaining if evidence of attorney participation could forfeit work product protection, courts would have to analyze "the degree of counsel involvement (both quantity and quality)," which "would necessarily require production of all of the drafts of the report for comparison, as well as production of all, or virtually all, communications between expert and counsel"); *see also Carpenter v. Deming Surgical Assocs.*, No. 14-64, 2015 U.S. Dist. LEXIS 201152, at *7–16 (D.N.M. Apr. 20, 2015) (unpublished) (holding communications between expert and counsel regarding a draft expert report are protected work product, despite the expert's testimony that counsel suggested several specific edits, and finding *Gerke*'s reading of Rule 26 "not support[ed]" by the "Advisory Committee comments and the plain language of Rule 26(b)(4)").

[16] 289 F.R.D. 316 (D. Or. 2013).

[17] *See id.* at 328–29.

after her injury.[18]  But without more, this does not show MedComp drafted the report or commandeered the expert's function.  Where Bard has not provided evidence of counsel participation in drafting the report, Bard's motion is denied.[19]

## II. Bard's motion to compel data supporting the report is granted.

Bard also moves to compel MedComp to produce the formulas its expert used to calculate damages in her report.[20]  Bard explains MedComp provided a PDF version of the expert's damages schedules, along with a Microsoft Excel spreadsheet containing hardcoded values, but Bard argues these documents do not include "all the underlying formulas, calculations, and within-cell links" used to create the expert's report.[21]  Bard seeks the "complete native files" used in creating the expert's damages exhibits, so Bard can "evaluate how [the expert] arrived at her damages figures."[22]  Bard argues it is

---

[18] (*See* Mot. to Compel Draft 1–2, Doc. No. 1061.)

[19] At the hearing, Bard's counsel suggested the court review a draft version of the expert report *in camera* to determine whether MedComp's counsel wrote any portion of it.  Given the absence of evidence suggesting counsel substantively participated in drafting the report, *in camera* review is inappropriate.  *See, e.g.*, *Rifle Remedies, LLC v. IRS*, No. 18-cv-00949, 2021 U.S. Dist. LEXIS 48943, at *30–31 (D. Colo. Mar. 16, 2021) (unpublished) (denying request for *in camera* review where the movant's arguments were unpersuasive and there was no evidence privilege was asserted in bad faith); *see also United States v. Zolin*, 491 U.S. 554, 572 (1989) ("[T]he decision whether to engage in *in camera* review rests in the sound discretion of the district court.").

[20] (*See* Mot. to Compel Data, Doc. No. 1064.)

[21] (*Id.* at 1.)

[22] (*Id.* at 2.)  Bard also notes MedComp filed a motion in September 2023 seeking the same type of information Bard now seeks—MedComp moved to compel production of "the primary data files and formulas [Bard's damages expert] used to create the [damages] worksheets in order to verify the accuracy of his report."  (*Id.* at 1 (quoting MedComp's Long Form Mot. to Compel Data Supporting Bard's Damages Expert Rep. 5, Doc. No. 947).)  Because Bard agreed to produce the information shortly after MedComp filed that motion, MedComp withdrew the motion.  (*See* MedComp's Notice That MedComp's Mot. to Compel Data Supporting Bard's Damages Expert Rep. Is Now

entitled to this information under Rule 26, which requires expert reports to include all "facts and data considered by the [expert] witness."[23]

MedComp contends it has already provided formulas "showing exactly how [MedComp's expert] arrived at her damages calculations," in both PDF and Excel format.[24] MedComp states the only thing it has not produced is the "metadata version," which is protected work product because it "reveal[s] the details of [MedComp's expert's] prior drafts."[25] At the hearing, MedComp's counsel argued the expert's results can be calculated using the PDF documents and Excel sheet MedComp already produced.

Under Rule 26(a)(2)(B)(ii) of the Federal Rules of Civil Procedure, an expert must disclose "the facts or data considered by the witness in forming [his or her opinion]."[26] To satisfy this standard, an expert report "must provide the substantive rationale in detail with respect to the basis and reasons for the proffered opinions."[27] In other words, the expert report "must explain factually why and how" the expert reached her

---

Moot, and Is Withdrawn, Doc. No. 959.)

[23] (Mot. to Compel Data 1, Doc. No. 1064 (quoting Fed. R. Civ. P. 26(a)(2)(B)(ii)).)

[24] (Def.'s Resp. to Pls.' Mot. to Compel Data Supporting Damages Expert Rep. 1–2, Doc. No. 1080.)

[25] (*Id.* at 2 (citing Fed. R. Civ. P. 26(b)(4)(B)–(C)).)

[26] Fed. R. Civ. P. 26(a)(2)(B)(ii).

[27] *Hilt v. SFC Inc.*, 170 F.R.D. 182, 185 (D. Kan. 1997); *see also* Fed. R. Civ. P. 26(a)(2)(B) advisory committee's note to 2010 amendment ("[T]he intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert.").

opinions.[28]  For example, a party must produce the "methodology, codes, coding, or other formula" its expert used in forming her opinion.[29]

Any Excel spreadsheet MedComp's expert used in forming her opinion must be produced to Bard, with "live" formula cells and within-cell links.  The formulas and links must be included in the spreadsheet, exactly as used by the expert.  Under Rule 26's disclosure standards, Bard is entitled to the "facts or data" underlying MedComp's expert's opinion, and this includes the formulas MedComp's expert used to calculate damages.[30]  It is insufficient for MedComp to merely provide hardcoded values in an Excel sheet, without including the formulas, links, or codes used to calculate these underlying values (such that Bard can assess how the expert combined these values to reach her damages figures).[31]  Accordingly, MedComp is ordered to produce within one week the underlying Excel spreadsheet(s) its expert used to calculate her damages figures, with full functionality, including formulas, codes, within-cell links, and calculations.[32]

---

[28] *Hilt*, 170 F.R.D. at 185.

[29] *Murray v. Manorcare of Topeka KS, LLC*, No. 19-2148, 2021 U.S. Dist. LEXIS 110529, at *8–15 (D. Kan. June 14, 2021) (unpublished) (ordering party to produce the formulas used in an expert's calculations, because the Excel sheet the party provided did not explain how the expert calculated the underlying values).

[30] *See, e.g.*, *id.*

[31] *See Green v. Monarch Recovery Mgmt., Inc.*, No. 1:13-cv-00418, 2014 U.S. Dist. LEXIS 57104, at *8 (S.D. Ind. Apr. 24, 2014) (unpublished) ("One of the unique strengths of Excel software is the ability to implement calculations and formulae that are not evident in a PDF version, so merely [producing] a PDF imprint of the surface information is not sufficient.").  By producing an Excel sheet with the Excel formulas removed, MedComp effectively produced the equivalent of a PDF file—an "imprint of the surface information."  *See id.*

[32] MedComp may remove metadata revealing the expert's prior drafts or edits, so long

CONCLUSION

Bard's motion to compel a draft version of the report[33] is denied, where Bard has provided no evidence MedComp's counsel participated in drafting the report. Bard's motion to compel data supporting the report[34] is granted, where Rule 26 entitles Bard to the facts or data MedComp's expert considered in forming her opinion.

DATED this 13th day of November, 2024.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

as it contains all formula values and is not hardcoded. See *Kavod Pharms. LLC v. Sigmapharm Labs., LLC*, No. 19-13448, 2022 Bankr. LEXIS 588, at *21 (Bankr. D.N.J. Mar. 4, 2022) (unpublished) (allowing party to redact metadata that would reveal privileged information); Fed. R. Civ. P. 26(b)(4)(B) (providing draft expert reports are protected work product, "regardless of the form in which the draft is recorded").

[33] (Doc. No. 1061.)

[34] (Doc. No. 1064.)