UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| C.R. BARD, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MEDICAL COMPONENTS, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE (DOC. NO. 1088)**<br><br>Case No. 2:17-cv-00754<br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

In this long-enduring patent infringement case, Plaintiffs (collectively, "Bard") have filed a motion to strike a supplemental discovery response and portions of two expert reports served by Medical Components, Inc. ("MedComp").[1] Bard contends the expert reports and discovery response raise non-infringing alternative products ("NIAs") MedComp did not disclose during fact discovery.[2] In response, MedComp argues its reliance on the new NIAs does not prejudice Bard because Bard has been aware of the

---

[1] (Pls.' Short Form Mot. to Strike Portions of Ms. Romans' and Dr. Voth's Rebuttal Expert Reps. Relating to Non-Infringing Alts. and to Strike MedComp's Second Suppl. Resp. to Interrog. No. 7 ("Mot."), Doc. No. 1088.) After a hearing on the motion, the court took the matter under advisement. (*See* Min. Entry, Doc. No. 1177.)

[2] (*See* Mot. 1–2, Doc. No. 1088; Pls.' Suppl. Br. in Supp. of Its Mot. to Strike ("Bard Suppl. Br.") 1, Doc. No. 1113.)

1

NIAs for years.³ As explained below, because MedComp fails to justify its untimely and prejudicial reliance on the new NIAs, Bard's motion to strike is granted.

BACKGROUND

In June 2018, Bard served an interrogatory request asking MedComp to "identify and describe in detail each alleged non-infringing alternative . . . to each Asserted Patent."⁴ After MedComp objected to the interrogatory on various grounds, Bard filed a motion to compel MedComp to identify any NIAs on which it intended to rely.⁵ The court granted Bard's motion and ordered MedComp to respond to the interrogatory, noting "this is the right time to go forward with this type of discovery," and "waiting until expert discovery . . . is unworkable."⁶ Pursuant to the court's order, MedComp supplemented its interrogatory response in December 2018, identifying several NIAs for one group of

---

³ (*See* Resp. to Pls.' Short Form Mot. to Strike ("Opp'n") 2, Doc. No. 1096; Def.'s Suppl. Resp. to Pls.' Short Form Mot. to Strike ("MedComp Suppl. Br.") 2, Doc. No. 1116.)

⁴ (*See* Bard Suppl. Br. 1, Doc. No. 1113.) In general, a NIA is a product which, in a world without the infringing product, a purchaser could have found acceptable and bought instead of the patented product. *See Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017). The availability of NIAs is relevant when calculating a patentee's lost profits—in the absence of NIAs, it is more likely customers who purchased the infringing product would have purchased the patented product instead. *See id.* The availability of NIAs may also affect damages sought under a reasonable royalty theory, which (among other considerations) values the patented product by comparing it to substitute products. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1334 (Fed. Cir. 2015).

⁵ (*See* Pls.' Short Form Mot. to Compel Resp. to Interrog. No. 7, Doc. No. 210.)

⁶ (Hr'g Tr. (Nov. 29, 2018) 46:19–25, Doc. No. 218; *see also* Min. Entry, Doc. No. 215 (noting the motion was granted during the hearing); Order Granting Pls.' Short Form Mot. to Compel Resp. to Interrog. No. 7, Doc. No. 217 (memorializing ruling).)

asserted patents ("the Port ID patents") and stating "MedComp has not identified any non-infringing alternatives" for the remaining patent ("the '639 patent").[7] Fact discovery closed in August 2019, and the parties served opening expert reports in September 2021. Bard contends its experts relied on MedComp's interrogatory response when opining on the availability and acceptability of alleged NIAs.[8] For example, one of Bard's experts stated in his lost profits analysis: "For the '639 patent, I understand that MedComp stated it 'has not identified any non-infringing alternatives.'"[9]

After several years of contentious litigation, an appeal, and an April 2024 substitution of MedComp's counsel, the parties served rebuttal expert reports (the final round of expert reports) in August 2024. Two of MedComp's rebuttal reports identified several alleged NIAs MedComp had not previously disclosed in its interrogatory response.[10] After Bard voiced its objection to the new NIAs, MedComp supplemented its interrogatory response in October 2024, adding the new NIAs.[11] Bard then filed the

---

[7] (*See* Ex. A to Mot., Def.'s Suppl. to Its Objs. and Resps. to Pls.' Second Set of Interrogs. 5–6, Doc. No. 1088-1.)

[8] (*See* Bard Suppl. Br. 3, Doc. No. 1113.)

[9] (*See* Ex. C to Mot., Expert Rep. of Dr. Gregory K. Leonard ¶ 68, Doc. No. 1090-3 (sealed).)

[10] (*See* Ex. D to Mot., Rebuttal Expert Rep. of Lois Romans ¶¶ 73–77 (opining that "Port-A-Cath ports" and "Vortex Ports" are NIAs for the '639 patent), ¶¶ 96–105 (opining that "CT Port Systems," "B. Braun Celsite Vascular Access Systems," and "Arrow Polysite Implantable Infusion Ports" are NIAs for the Port ID patents), Doc. No. 1090-4 (sealed); Ex. E to Mot., Rebuttal Expert Rep. of Dr. Nancy Voth 20–22, Doc. No. 1090-5 (sealed) (referencing the putative NIAs identified in Ms. Romans' rebuttal report).)

[11] (*See* Ex. F to Mot., Def.'s Fourth Suppl. to Its Objs. and Resps. to Pls.' Second Set of Interrogs. 6–8, Doc. No. 1088-6.)

instant motion, asking the court to strike the portions of MedComp's expert reports which rely on the previously undisclosed NIAs, as well as MedComp's October 2024 supplemental interrogatory response.[12] Bard argues MedComp's reliance on the new NIAs is prejudicial because Bard had no opportunity to take discovery regarding the NIAs or have its experts address them.[13] MedComp responds that Bard cannot be prejudiced because Bard has long been aware of the NIAs due to various references throughout this litigation.[14] Conflictingly, MedComp also contends it only became aware of the NIAs when its experts identified them during the rebuttal expert report process.[15]

## LEGAL STANDARDS

Rule 26(e)(1)(A) of the Federal Rules of Civil Procedure requires a party to supplement its discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect."[16] And under Rule 37(c)(1), a party who fails to timely supplement a discovery response cannot rely on the new information "unless the failure was substantially justified or is harmless."[17] Courts in the Tenth Circuit consider the following factors when evaluating whether a failure to supplement was substantially justified or harmless: "1) the prejudice or

---

[12] (*See* Mot. 1, Doc. No. 1088.)

[13] (*See* Bard Suppl. Br. 8–10, Doc. No. 1113.)

[14] (*See* MedComp Suppl. Br. 2, Doc. No. 1116.)

[15] (*See id.* at 7.)

[16] Fed. R. Civ. P. 26(e)(1)(A).

[17] Fed. R. Civ. P. 37(c)(1).

4

surprise to the party against whom the testimony is offered; 2) the ability of [that] party to cure the prejudice; 3) the extent to which introducing such testimony would disrupt the trial; and 4) the [failing] party's bad faith or willfulness."[18] Courts regularly strike expert report references to NIAs which were not timely disclosed.[19]

ANALYSIS

As an initial matter, MedComp failed to timely supplement its discovery response. Bard asked MedComp to identify the NIAs on which it intended to rely, and MedComp was ordered to respond to this request in November 2018.[20] MedComp offers no adequate explanation for its failure to supplement its response until October 2024—five years after discovery closed, and two months after the parties served their final expert reports. MedComp argues it only became aware of the NIAs when its experts identified them in their rebuttal reports.[21] But this is inconsistent with MedComp's contention that

---

[18] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[19] *See, e.g.*, *Nat'l Prods. v. Innovative Intelligent Prods.*, No. 2:20-cv-00428, 2024 U.S. Dist. LEXIS 134588, at *18–21 (W.D. Wash. July 30, 2024) (unpublished) (striking portion of expert report that relied on previously undisclosed NIAs); *see also Sherwin-Williams Co. v. PPG Indus.*, No. 2:17-cv-01023, 2019 U.S. Dist. LEXIS 224511, at *37 n.11 (W.D. Pa. Nov. 12, 2019) (unpublished) ("The simple fact is that [the defendant's] failure to disclose [a product] as an NIA until its rebuttal expert report is an approach that has been soundly rejected by courts and should be rejected here.") (collecting cases).

[20] (*See* Order Granting Pls.' Short Form Mot. to Compel Resp. to Interrog. No. 7, Doc. No. 217.)

[21] (*See* MedComp Suppl. Br. 7, Doc. No. 1116.)

references to the NIAs throughout the case put Bard on notice of the NIAs[22]—MedComp cannot contend Bard should have been aware of the NIAs while simultaneously contending MedComp was unaware of them. And although MedComp notes it substituted its counsel in April 2024,[23] litigants cannot evade discovery obligations by choosing to hire new counsel.[24]

In sum, MedComp violated its obligation to supplement by neglecting to identify the new NIAs until October 2024. The remaining question is whether MedComp's failure to supplement was substantially justified or harmless under the *Woodworker* factors.[25] Under these factors courts consider "1) the prejudice or surprise to the party against whom the testimony is offered; 2) the ability of [that] party to cure the prejudice; 3) the extent to which introducing such testimony would disrupt the trial; and 4) the [failing] party's bad faith or willfulness."[26] Both parties contend all four factors weigh in their favor.[27] Each factor is addressed below.

---

[22] (*See, e.g.*, *id.* at 3–4 (arguing a December 2020 deposition "revealed" that the products were acceptable NIAs).)

[23] (*See id.* at 3.)

[24] *See SPV-LS, LLC v. Transamerica Life Ins.*, No. 4:14-CV-04092, 2016 U.S. Dist. LEXIS 91834, at *13 (D.S.D. July 14, 2016) (unpublished) ("A party may not evade compliance with discovery rules by the simple expedient of hiring a new lawyer."). MedComp also conceded at the hearing that it should have supplemented its discovery response at least contemporaneously with the expert reports relying on the new NIAs.

[25] *See* Fed. R. Civ. P. 37(c)(1) (requiring exclusion unless the failure to supplement was "substantially justified" or "harmless").

[26] *Woodworker's Supply*, 170 F.3d at 993.

[27] (*See* Bard Suppl. Br. 8–10, Doc. No. 1113; MedComp Suppl. Br. 2, Doc. No. 1116.)

## I. Prejudice and surprise

Bard contends MedComp's late disclosure is surprising and prejudicial, particularly where MedComp was specifically ordered to identify the NIAs on which it intended to rely years ago.[28] Bard argues that "by failing to disclose information about the [new NIAs] during fact discovery, MedComp deprived Bard [of] the opportunity to seek discovery on those products, including their design, function, availability, and commercial acceptability."[29] Bard contends this lack of discovery hinders its ability to show "whether the products were non-infringing, available, and acceptable under the lost-profits framework."[30] Bard also argues its experts had no chance to address the NIAs, where MedComp did not raise the NIAs until the final round of expert reports.[31]

MedComp responds that "Bard cannot be really surprised or prejudiced," because Bard has been aware of the NIAs for years.[32] MedComp contends the acceptability of the NIAs for the '639 patent was "first revealed" during a December 2020 deposition of a former Bard employee.[33] Although this employee did not identify the new NIAs by name, MedComp contends the he "implicated prior art ports" such as

---

[28] (*See* Bard Suppl. Br. 8–9, Doc. No. 1113.)

[29] (*Id.* at 8.)

[30] (*See id.* (citing *Mentor Graphics*, 851 F.3d at 1285–86).)

[31] (*Id.* at 9.)

[32] (MedComp Suppl. Br. 4, Doc. No. 1116.)

[33] (*Id.* at 3.)

the NIAs by testifying generally about ports sold by Bard's competitors.[34] MedComp also argues "Bard has unequivocally established AngioDynamics [a company which makes one of the new NIAs] as a source of noninfringing alternatives by virtue of a Settlement Agreement and License under Bard's port patents including *inter alia* the '639 patent."[35] As to the new NIAs relating to the Port ID patents, MedComp contends these products were identified during an April 2019 deposition of MedComp's Vice President of Sales and Marketing.[36] Again, the deponent does not mention the products by name—he testifies generally about whether Bard's competitors sell power injectable ports.[37] Finally, MedComp argues "Bard's prejudice and surprise is belied by the fact it has never identified with specificity to MedComp what fact discovery it would need."[38]

---

[34] (*See id.* at 4 ("By categorically admitting that the ports sold by Bard's competitors remained the same before and after obtaining FDA approval, [the deponent] implicated prior art ports such as [the new NIAs] as acceptable noninfringing alternatives whose structure had not changed, and whose only advancement was . . . unrelated to the '639 patent.").)

[35] (*Id.*)

[36] (*Id.* at 6 (citing Ex. 8 to MedComp Suppl. Br., Dep. of John W. Timko (Apr. 24, 2019) 76:19–81:15, Doc. No. 1118-5 (sealed)).)

[37] (*See* Ex. 8 to MedComp Suppl. Br., Dep. of John W. Timko (Apr. 24, 2019) 76:19–81:15, Doc. No. 1118-5 (sealed).) MedComp's contention that this testimony "identified" the NIAs is—at best—a stretch. For example, when asked about a specific company that makes one of the new NIAs, the deponent was unsure whether the company even makes power-injectable ports. (*See id.* at 77:21–78:02 ("Q: B. Braun, do they have a power-injectable vascular access port? A: I believe they do, but I can't answer that with 100 percent certainty. Q: Okay. Do you recall approximately how long B. Braun has been in the U.S. market? A: I don't know.").)

[38] (MedComp Suppl. Br. 7, Doc. No. 1116.)

MedComp's failure to timely disclose its intention to rely on the new NIAs prejudices and surprises Bard. First, the testimony and settlement agreement MedComp cites can hardly be construed as identifying the NIAs. None of these references identify any of the products by name—instead, MedComp points only to generic references to Bard's competitors. Indeed, MedComp's attempt to identify "tangential references in the record referencing [the products] comes off largely as a hindsight attempt to 'find' disclosure, rather than evidence of [MedComp's] compliance with disclosure requirements."[39] Moreover, even if these tangential references alerted Bard to the existence of the products, they did not put Bard on notice that MedComp would *contend* the products are acceptable NIAs—particularly where MedComp was ordered to identify the NIAs on which it intended to rely six years ago.[40] Finally, MedComp's untimely disclosure deprived Bard of the opportunity to take discovery regarding the design, function, availability, and acceptability of the newly identified

---

[39] *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084, 2018 U.S. Dist. LEXIS 202523, at *19 (E.D. Tex. Nov. 15, 2018) (unpublished).

[40] *See, e.g.*, *Pelican Int'l, Inc. v. Hobie Cat Co.*, No. 3:20-cv-02390, 2023 U.S. Dist. LEXIS 29855, at *37–38 (S.D. Cal. Feb. 10, 2023) (unpublished) (striking untimely NIA references and noting "disclosure that a design exists is not a disclosure that [the defendant] is contending that it constitutes a readily available, acceptable non-infringing alternative"); *see also Parker-Hannifin Corp. v. Champion Labs.*, No. 1:06-CV-2616, 2008 U.S. Dist. LEXIS 32921, at *22 (N.D. Ohio Apr. 22, 2008) (unpublished) ("The question is not, as defendant contends, whether plaintiffs knew of the existence of the [products] and should have guessed they would be put forth as an alternative. Rather, the question is whether plaintiffs will be prejudiced by defendant's failure to disclose them as such during discovery.").

NIAs[41]—Bard sufficiently identified what fact discovery it would need.[42] In sum, at this stage of the case, MedComp's reliance on previously undisclosed NIAs prejudices and surprises Bard.

## II. Curability of the prejudice

Given the stage of the case, Bard cannot cure the prejudice. MedComp argues Bard "had the ability to cure any prejudice during expert discovery and in the subsequently scheduled depositions of [the MedComp experts at issue] and chose not to."[43] MedComp also states it would consent to supplemental expert reports.[44] But reopening discovery or permitting supplemental or additional expert reports would be

---

[41] *See, e.g.*, *ICM Controls Corp. v. Honeywell Int'l, Inc.*, No. 5:12-CV-1766, 2021 U.S. Dist. LEXIS 145618, at *15 (N.D.N.Y. Aug. 4, 2021) (unpublished) (finding untimely disclosure of NIAs prejudicial because the plaintiff "will not have the opportunity to depose fact witnesses about these hypothetical alternatives and will be unable to explore their feasibility, functionality, acceptability, and potential cost"); (*see also* MedComp Suppl. Br. 3, Doc. No. 1116 (noting "the *Panduit* [damages] test inquires not only as to the existence of noninfringing alternatives, but whether the alternatives were *acceptable*" (emphasis in original))).

[42] (*See* Bard Suppl. Br. 8–9, Doc. No. 1113 ("During fact discovery, Bard attempted to take complete discovery on the NIAs MedComp would rely on at trial, including specifically requesting the identity of individuals with knowledge of any alleged NIAs and information regarding the costs and time to implement each of the NIAs. By failing to disclose information about the [new NIAs] during fact discovery, MedComp deprived Bard [of] the opportunity to seek discovery on those products, including their design, function, availability, and commercial acceptability. That information is relevant to the question of whether the products were non-infringing, available, and acceptable under the lost-profits framework. *See Mentor Graphics*, 851 F.3d at 1285–86. Without that information, Bard was prejudiced in its ability to prepare its damages case.").)

[43] (MedComp Suppl. Br. 7, Doc. No. 1116.)

[44] (*Id.*)

disruptive at this stage.[45] And even if MedComp's experts were not deposed until after the disputed reports were served, requiring Bard to depose MedComp's experts without the benefit of fact discovery on the NIAs is prejudicial.[46] Moreover, Bard's experts have had no opportunity to address the NIAs, where they had already been deposed.

### III.    Trial disruption, and bad faith or willfulness

While no trial date has been set, reopening discovery, depositions, or expert reports would delay the progression of the case and the ultimate trial—as explained above.[47] Bard also argues "MedComp should not be permitted to mislead or confuse

---

[45] *See, e.g.*, *ICM Controls*, 2021 U.S. Dist. LEXIS 145618, at *16 (rejecting argument that untimely NIA disclosure could be cured by reopening discovery—"because this case has been pending for nearly a decade, and in light of the need to approach a timely resolution, the Court finds exclusion warranted and fair"); (*see also* Hr'g Tr. (Nov. 29, 2018) 46:21–47:05, Doc. No. 218 ("[W]aiting until expert discovery—after the disclosure of an expert report and with two months prior to the rebuttal report due to that is unworkable, in my experience, of dealing with damages discovery on patent cases. There's a lot of moving parts and I don't think it could be accomplished within that two-month period. So, therefore, I think you have to do the factual aspect of the discovery for damages prior to any expert reports being done so you have that two-month period in order to conduct the expert discovery that's needed to prepare that report.")).

[46] *See United States v. N. E. Med. Servs.*, No. 10-cv-01904, 2014 U.S. Dist. LEXIS 174446, at *15 (N.D. Cal. Dec. 17, 2014) (unpublished) (noting fact discovery "concludes before expert discovery so that the parties may rely on a complete factual record to inform their own experts and depose their opponents' experts").

[47] *See also Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, 297 F. Supp. 3d 547, 560 (D.S.C. 2018) ("Even though [the defendant] disclosed this [NIA] several months in advance of the trial, the only available cure to [the plaintiff] at this point would be to permit [the plaintiff] to conduct additional discovery on the eve of trial, which would cause significant burden and disruption, or for the court to continue trial, which would result in a significant disruption.").

the jury by presenting expert opinions about NIAs based on an incomplete record."[48] In response, MedComp states it "would consent to trial testimony on the NIAs."[49] But as noted above, requiring Bard to argue about newly identified NIAs without the benefit of fact discovery or expert reports on the NIAs is prejudicial. Finally, while there is no direct evidence of bad faith or willfulness, MedComp has offered no justification for its failure to timely supplement its discovery response.[50]

## CONCLUSION

Weighing all the *Woodworker* factors, MedComp's decision to raise new NIAs during the final round of expert reports is not substantially justified or harmless. Accordingly, MedComp may not rely on the new NIAs. Bard's motion to strike[51] is granted, and the following items are stricken:

- All references in Ms. Romans' and Dr. Voth's rebuttal expert reports to the "Port-a-Cath ports" or the "Vortex ports" as NIAs for the '639 patent;

---

[48] (Bard Suppl. Br. 10, Doc. No. 1113.)

[49] (MedComp Suppl. Br. 7, Doc. No. 1116.)

[50] *See Nat'l Prods.*, 2024 U.S. Dist. LEXIS 134588, at *20 (striking untimely reference to NIAs where "Defendant has offered no justification for failing to disclose these NIAs, and the failure to disclose them is not harmless"); *see also Realtime Data*, 2018 U.S. Dist. LEXIS 202523, at *19 ("Defendants' attempt[] to cite to tangential references in the record referencing [the products] comes off largely as a hindsight attempt to 'find' disclosure, rather than evidence of Defendants' compliance with disclosure requirements.").

[51] (Doc. No. 1088.)

- all references in Ms. Romans' and Dr. Voth's rebuttal expert reports to the "CT Port Systems," the "B. Brain Celsite" ports, or the "Arrow Polysite" ports as NIAs for the Port ID patents; and

- MedComp's October 14, 2024 supplemental response to Bard's Interrogatory No. 7.[52]

DATED this 15th day of January, 2025.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge

---

[52] (*See* Ex. F to Mot., Def.'s Fourth Suppl. to Its Objs. and Resps. to Pls.' Second Set of Interrogs. 6–8, Doc. No. 1088-6.)